UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DYANNA M. WHITE,

                   Plaintiff,

            -v-                      5:22-CV-370

JUDGE EUGENE RENZI,
In their individual and
official capacity, JUDGE
PETER SCHWERZMANN,
In their individual and
official capacity, ATTORNEY
MICHAEL YOUNG, In their
individual and official capacity,
ATTORNEY (RETIRED)
ARTHUR STEVER, III, In
their individual and official
capacity, and POLICE OFFICER
MICHAEL MANEY, In their
individual and official capacity,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:             OF COUNSEL:

DYANNA M. WHITE
Plaintiff, Pro Se
200 6th Street
Providence, RI 02906

BOND SCHOENECK & KING              JONATHAN B. FELLOWS, ESQ.
Attorneys for Defendants Judge
    Eugene Renzi, Judge Peter
    Schwerzmann, Attorney (retired)
    Arthur Stever, III, and Police
    Officer Michael Maney
One Lincoln Center
Syracuse, NY 13202

MORRISON, MAHONEY LAW FIRM        ARTHUR J. LIEDERMAN, ESQ.
Attorneys for Defendant Attorney
    Michael Young
120 Broadway, Suite 1010
New York, NY 10271

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On December 23, 2021, *pro se* plaintiff Dyanna M. White ("White" or "plaintiff") filed this 42 U.S.C. § 1983 action in the U.S. District Court for the District of Rhode Island.  *See* Dkt. No. 1 at 8.[1]

Broadly stated, White alleges defendants Judge Eugene R. Renzi ("Judge Renzi"), Judge Peter A. Schwerzmann ("Judge Schwerzmann"), Attorney Arthur Stever, III ("Attorney Stever"), Attorney Michael Young ("Attorney Young"), and Watertown Police Officer Michael Maney ("Officer Maney")

---

[1] Pagination corresponds to CM/ECF.

(collectively "defendants") violated her rights in connection with certain state court proceedings in Jefferson County, New York.[2]  *Id*. at 5.

On February 10, 2022, White amended her complaint.  Dkt. No. 9.  Shortly thereafter, defendants moved to dismiss the pleading for, *inter alia*, lack of personal jurisdiction and improper venue.  Dkt. Nos. 12, 14.  Those motions were fully briefed.  Dkt. Nos. 15–18.

On April 18, 2022, Chief U.S. District Judge John J. McConnell, Jr., sitting in the District of Rhode Island, denied defendants' motions to dismiss without prejudice and transferred the action to the Northern District of New York, Dkt. No. 19, where it was assigned to this Court, Dkt. No. 20.

On May 5 and 13, 2022, defendants filed renewed motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b), this time on the ground that White had failed to state any plausible claims for relief.[3]  Dkt. Nos. 31, 35.  White, for her part, filed a "motion to strike" defendant Attorney Young's motion to dismiss, Dkt. No. 41, as well as a "motion for leave to file" a sur-reply, Dkt. No. 48.

The motions have all been fully briefed and will be considered on the basis of the submissions without oral argument.

---

[2]  Plaintiff's amended complaint also names John and Jane Does 1 through 10.

[3]  Defendant Young also moved under Rule 12(b)(5) alleging insufficient service of process.

## II. **BACKGROUND**

The following facts are taken from White's operative complaint, Dkt. No. 9, and are assumed true for the purpose of assessing the motions to dismiss.

White is the daughter of John W. Morrison ("John").  *See* Am. Compl. at 10 (referring to John's wife as plaintiff's "mother").  Together, the Morrison family—composed of John, his wife Arlene Morrison, their son David Morrison, and their daughter Cheryl Pastor—were shareholders in Morrison's Furniture Store, Inc. and Morrison's Realty Corp, Inc.  *Id*. at 9.

On June 15, 2001, John executed a will and testament that nominated his wife Arlene as executrix.  Am. Compl. at 9.  Around this time, John also changed the named beneficiaries on his insurance policies.  *Id*.  As a result, the policies primarily benefited his son David and daughter Cheryl.  *Id*.

On May 10, 2011, defendant Attorney Stever "executed the First Codicil to Last Will and Testament of John Morrison."  Am. Compl. at 9.  According to plaintiff, the "sole purpose" of this codicil was to remove John's wife Arlene as executrix.  *Id*.  Instead, the codicil nominated John's son David and his daughter Cheryl as co-executors.  *Id*.  Plaintiff alleges that this codicil was executed under questionable circumstances:

> The two purported signing witnesses were Tricia
> Creighton (paralegal) and Tonya Ryan (John
> Morrison's full time/primary in home caregiver).  John

> Morrison's signature was notably shaky and a marked
> contrast from that of the signature on his 2001 Last
> Will and Testament.

Am. Compl. at 9.  After a long illness, John died on December 6, 2011.  *Id*.

On March 12, 2012, a probate petition for John's estate was filed in Jefferson County Surrogate's Court.  Am. Compl. at 9.  Shortly after John's death, White contacted Lisa Hartman, a paralegal at Conboy, McKay, Bachman, and Kendall "to try to ensure that Arlene Morrison would receive the insurance proceeds that she was entitled to."  *Id*.  Ms. Hartman told plaintiff "that the beneficiary pages had been torn from all of the insurance policies and that she could provide no assistance."  *Id*.

In October 2012, John's wife Arlene received "her first monthly stipend from the state/trust for $1,250.00."  Am. Compl. at 9.  White alleges that this forced her mother "to live off the little insurance money received."  *Id*.  As plaintiff explains, after John's death "the now combined monthly social security proceeds" for the household were "reduced by $6,220."  *Id*.

Arlene soon suffered a stroke, and required "24 hour in home care."  Am. Compl. at 10.  According to plaintiff, she "did not realize that [her] [m]other was automatically entitled to the standard spousal election until it was too late, but [her] siblings, all of the attorneys and the accountant were surely aware."  *Id*. at 9–10.

On November 13, 2012, defendant Attorney Stever mailed White a letter in which he offered to purchase plaintiff's shares in Morrison's Realty Corp for $19,636.29. Am. Compl. at 10. Attorney Stever mailed plaintiff a second letter in December in which he repeated the offer. *Id*.

White refused these offers. Am. Compl. at 10. As she explains, the shares were listed in court documents as being valued at $98,181.72. *Id*. According to plaintiff, she spent "three and a half years being bullied and harassed by this group of lawyers and [her] siblings to sell [her] financially-struggling [m]other's stock for 20% of its value." *Id*.

Near the end of 2013, the "estate/trust" "let [plaintiff's] [m]other run out of money." Am. Compl. at 10. Plaintiff began mailing monthly checks to David "to offset deductions from the estate/trust." *Id*.

On November 15, 2013, attorney Samuel Burgess ("Attorney Burgess") mailed to White a request for an accounting of plaintiff's "handling" of her mother Arlene's finances. Am. Compl. at 10. Plaintiff responded to this request within a two-week period. *Id*.

In a letter dated February 7, 2014, Attorney Burgess forwarded White a letter in which he "promis[ed] a quarterly accounting moving forward." Am. Compl. at 10. According to plaintiff, that has "never been provided" to her. *Id*. Arlene, who never recovered from her stroke, died on September 19, 2015. *Id*.

During March and April of 2016, David "emptied out the majority of the contents of" John and Arlene's house at 242 Thompson Boulevard in Watertown, New York.  Am. Compl. at 10.

On April 26, 2016, attorney Victoria Collins ("Attorney Collins") filed a "Petition for Judicial Settlement and Accounting" with the Jefferson County Surrogate's Court.  Am. Compl. at 10.

On April 28, 2016, White retained attorney Marcy Robinson Dembs ("Attorney Dembs") "with a verbal agreement that she would petition Jefferson County Surrogate's Court for a $5,000 disbursement from John Morrison's estate."  Am. Compl. at 10.  As plaintiff explains, she "did not have the money upfront for her retainer."  *Id*.

On May 5, 2016, Attorney Dembs met with Attorney Collins.  Am. Compl. at 10.  The attorneys discussed issues with the estates of John and Arlene Morrison.  *Id*.  From this meeting, plaintiff learned that Arlene had purportedly "gift[ed]" 18 shares of stock to David and Cheryl.  *Id*.  Plaintiff challenged the legitimacy of this transaction.  *Id*.

From this meeting, White also learned that Attorney Collins insisted that, "with the exception of the removal of some items that were in poor condition, [her parents'] household remained intact."  Am. Compl. at 10.  Plaintiff alleges this was "a false statement" and "grounds for removal as Executor of

the estate." *Id*. Although this information "should have incensed any Judge," plaintiff alleges that "nothing was ever done about it." *Id*.

In e-mails dated May 5, 2016 and May 24, 2016, Attorney Dembs "shared" that there was no proof that Arlene had gifted any stock to either of her children. Am. Compl. at 11. On May 11, 2016, plaintiff "was surprised to learn" that Attorney Dembs had requested "a $30,000 disbursement from [the] estate versus the original $5,000 [they] had discussed." *Id*. According to plaintiff, she "reluctantly signed off on this." *Id*.

White later received from Attorney Dembs an invoice "for over $10,000 for a single month's work." Am. Compl. at 11. This "startled" her, and "[f]rom that point on, [she] sensed [she] was being put in a situation where [she] was going to be taken advantage of financially." *Id*. Plaintiff was "further startled" to learn that Attorney Dembs had instructed Attorney Collins "to make the disbursement check out to [her]" and Attorney Dembs's law firm. *Id*. Plaintiff "drove 600 miles round trip in one day, in good faith, to hand deliver the signed check." *Id*.

In an e-mail dated June 1, 2016, Attorney Dembs provided to White certain details of a conversation she had with Attorney Collins during and after an appearance in probate court. Am. Compl. at 11. According to plaintiff, Attorney Collins told Attorney Dembs that if she could not prove the shares were gifted she would "back off that claim." *Id*.

On August 12, 2016, Attorney Dembs sent Attorney Collins a three-page letter that highlighted the outstanding issues regarding John's estate and the residuary trust.  Am. Compl. at 11.  Notably, this letter included a request for information about an apparent discrepancy in the number of shares of stock that John owned at the time of his death.  *Id*.  Plaintiff alleges that her last phone conversation with Attorney Dembs took place on August 26, 2016, where she was told that "there was nothing else to do until" Arlene's attorney had been deposed.  *Id*.

On September 22, 2016, White attended a proceeding in Jefferson County Surrogate's Court in Watertown, New York.  Am. Compl. at 11.  There, Attorney Collins "confirmed in person" that "there was still no evidence to support the purported stock gifting by Arlene."  *Id*.  In a letter dated that day, Attorney Collins stated that they were still researching the discrepancy in the number of shares.  *Id*.  After receiving several more bills for fees, plaintiff terminated Attorney Dembs on November 17, 2016.  *Id*. at 12.

In March of 2017, after months of effort, White retained defendant Attorney Young to handle her parents' estates.  Am. Compl. at 12.  When Attorney Young sent plaintiff documents authorizing him to seek fees from the estates, she refused to sign them.  *Id*. at 13.  After several more months, defendant Judge Schwerzmann "handed down a Decision and Order that

[plaintiff's] Mother died intestate and her estate has been sitting in abeyance since that time." *Id*.

White repeatedly tried to contact Attorney Young but often had little success. Am. Compl. at 13–14.  In April of 2018, plaintiff told Attorney Young that files and videos from her cell phone and computer had been "hacked." *Id*. at 14.  Later, on June 26, 2018, plaintiff attended a deposition where she was "harass[ed] and humiliat[ed]." *Id*.  Eventually, plaintiff's siblings were deposed by Attorney Young, but "he went easy on them," and failed to adequately probe into the questionable stock gifts. *Id*. at 15–16.

On May 8, 2018, White filed a grievance against Attorney Dembs with the Fifth Judicial District Grievance Committee in Syracuse, New York.  Am. Compl. at 12.  The Committee's Chief Counsel responded on August 22, 2018, explaining that "it wasn't their place to determine 'the quality of an attorney's representation." *Id*.

On July 12, 2018, White attempted to get Attorney Young to begin partition actions on three properties she co-owned with her brother David.  Am. Compl. at 16.  As plaintiff explains, Attorney Young failed to execute these transactions. *Id*.  These failures caused plaintiff "to incur significant financial liabilities." *Id*.

On July 23, 2018, White contacted the Watertown Police.  Am. Compl. at 16.  Officer Maney returned her call. *Id*.  Plaintiff "explained the situation of

what appeared to be an alleged forged signature on the codicil" to her father's will.  *Id.*  Plaintiff also "faxed him copies of the relevant information."  *Id.*  For instance, plaintiff alleges that Tonya Ryan, her father's full-time caregiver before his death, told her that "it was not her signature" and that "she had no recollection of the event."  *Id.*  Weeks later, Officer Maney told plaintiff that the police "would not be doing anything further" and that she "would just have to accept" that she "was the victim of the forgery."  *Id.* at 17.

On July 26, 2018, Attorney Young deposed defendant Attorney Stever.  Am. Compl. at 17.  Plaintiff attended the deposition by teleconference.  *Id.*  According to plaintiff, Attorney Stever made false statements about his interactions with John and Arlene.  *Id.*  Plaintiff further alleges that Attorney Stever's description of how the codicil was witnessed and notarized were irregular or improper.  *Id.*

Various estate-related proceedings continued to occur in Jefferson County Surrogate's Court, but plaintiff was sometimes excluded from them.  Am. Compl. at 18–19.  Plaintiff became increasingly frustrated with defendant Attorney Young.  *Id.* at 18–20.  She eventually stopped speaking with him entirely.  *Id.* a 20.

On February 25, 2021, White received an e-mail from Attorney Young in which he explained that, thanks to COVID-19 and Judge Schwerzmann's retirement, there had been no action in her case.  Am. Compl. at 21.  A new

judge, defendant Judge Renzi, had been assigned.  *Id*.  Plaintiff responded to Attorney Young with a series of e-mails in which she "expressed disbelief" that he had failed to communicate important information to her.  *Id*.

Although White no longer approved of Attorney Young's performance, he continued to make appearances on her behalf in the probate court.  Am. Compl. at 22–23.  Eventually, on March 27, 2021, Attorney Young sent plaintiff a letter in which he acknowledged that he would no longer be representing her.  *Id*. at 23.

On April 1, 2021, White attended a virtual court conference *pro se*.  Am. Compl. at 24.  Thereafter, plaintiff retained attorney Paul O'Brien ("Attorney O'Brien") to represent her.  *Id*.  Attorney O'Brien appeared on plaintiff's behalf in connection with further proceedings before Judge Renzi.  *See id*.

On July 6, 2021, Attorney O'Brien received notice of a motion to dismiss that had been filed in probate court.  Am. Compl. at 25.  Plaintiff alleges that this notice did not contain supporting documentation.  *Id*.  Plaintiff further alleges that the documentation was delivered later, "leaving [her] attorney only 6 days to file responsive papers."  *Id*.  According to plaintiff, "[t]his was a very deliberate effort to provide [her] attorney with the least amount of time possible to prepare a response."  *Id*.  Eventually, the motion was briefed by all the parties involved.  *Id*. at 25–26.

On July 21, 2021, White attended a court teleconference before Judge Renzi.  Am. Compl. at 26.  There, she learned that Judge Renzi's accountant, Peter Sovie, had also been involved in valuing the businesses/stock at issue in the probate proceedings.  *Id*.  Judge Renzi gave the parties an opportunity to object.  *Id*.  Plaintiff, who was "shocked by this information" and had "no time to think of the future ramifications," "concurred at the time" but "immediately regretted" her agreement.  *Id*.  Other proceedings followed.  *Id*.

On August 3, 2021, Judge Renzi issued an Order and Decision that allowed for a "final delay to ensure that all sides are fully prepared to litigate their case."  Am. Compl. at 27.  Plaintiff alleges Judge Renzi had previously denied her attorney's request for delay and that this sudden change of heart "show[s] bias."  *Id*.  In plaintiff's view, "[t]his has been a collaborative effort to delay [the probate] proceedings as long as possible."  *Id*.  Plaintiff soon came to believe Judge Renzi was biased against her.  *Id*. at 28.

On September 19, 2021, White and two companions tried to remove a car from her parents' house but discovered that the electricity to the garage had been cut and the garage door spring had been disconnected.  Am. Compl. at 29.  Plaintiff alleges her family did these things as part of a "deliberate effort to halt [her] ability to satisfy [her] responsibilities to vacate" her parents' property.  *Id*.  The next morning, plaintiff discovered that the auto trailer she brought to the house had also been vandalized.  *Id*.

On December 2, 2021, Judge Renzi issued an Order in which he "arbitrarily handed down a ruling allowing for the $200,000 capped valuation" of the stock to stand. Am. Compl. at 30. Thereafter, the parties agreed to a delay in further proceedings while plaintiff appealed. *Id*. As plaintiff explains, Judge Renzi's December 2 Order "was exactly what [she] predicted." *Id*. Attorney O'Brien has filed a "preliminary appeal" on plaintiff's behalf "with the Appellate Court in Rochester, NY," but plaintiff alleges that she cannot afford to pay him the $25,000 appeal fee. *Id*.

In this action, White asks the Court:

> To declare that my constitutional rights were violated pursuant to 28 USC 2201 and 2202 and that all NY state court judges enforce the NY Code of Judicial Conduct and all NY attorneys abide by NY Part 1200 Rules of Professional Conduct.

Am. Compl. at 8.

## III. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

As an initial matter, White is proceeding *pro se*. Accordingly, her filings must be "liberally construed" and "held to less stringent standards than a formal pleading drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (cleaned up); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (observing that courts must liberally construe pleadings and briefs submitted by *pro se* litigants in a way that raises the strongest arguments they suggest).

In light of that solicitude, White's "motion for leave to file" a sur-reply, at least to the extent she has attached to this motion her proposed additional sur-reply arguments (Dkt. No. 48-1), will be granted. The Court will consider these additional arguments in connection with the pending motions to dismiss. However, plaintiff's "motion to strike" defendant Attorney Young's motion to dismiss must be denied. Even accounting for her status as a *pro*

- 15 -

*se* litigant, her argument in favor of striking Attorney Young's filing—which is based on the alleged impropriety of an attorney who *is not* admitted to this District possibly participating in the drafting of a brief that has been signed by an attorney who *is* admitted to this District—is without merit.

White asserts claims pursuant to: (1) 42 U.S.C. § 1983 under the First, Fifth, Seventh, and Fourteenth Amendments; (2) 28 U.S.C. §§ 2201 and 2202; (3) 28 U.S.C. §§ 1331 and 1332; (4) 28 U.S.C. § 1391; (5) 18 U.S.C. § 1965; (6) 18 U.S.C. § 1346; (7) 18 U.S.C. §§ 241 and 242; (8) the New York Code of Judicial Conduct; and (9) Part 1200 of the New York Rules of Professional Conduct.  Am. Compl. at 5.

## A.  <u>42 U.S.C. § 1983</u>

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  Importantly, however, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

1.  **State Action**

White alleges § 1983 claims based on violations of her rights under the
First, Fifth, Seventh, and Fourteenth Amendments.  Am. Compl. at 5.  She
also alleges each defendant has acted under color of state law because they
"are either NY state officers of the court or NY state law enforcement."  *Id.*

White is correct as to defendants Judge Renzi, Judge Schwerzmann, and
Officer Maney.  But she is incorrect as to defendants Attorney Stever and
Attorney Young.  "Because the United States Constitution regulates only the
government, not private parties, a litigant claiming that [her] constitutional
rights have been violated must first established that the challenged conduct
constitutes 'state action.'"  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir.
2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir.
2005)).

"[S]tate action requires both an alleged constitutional deprivation 'caused
by the exercise of some right or privilege created by the State or by a rule of
conduct imposed by the State or by a person for whom the State is
responsible,' *and* that 'the party charged with the deprivation must be a
person who may fairly be said to be a state actor.'"  *Am. Mfrs. Mut. Ins. Co. v.
Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457
U.S. 922, 937 (1982)).

As the Supreme Court has recognized, "there is no single test to identify state actions and state actors." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294 (2001). Although a host of factors can bear on this question, three main tests have emerged:

> For purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up).

Measured against this body of law, White's § 1983 claims against defendant Attorney Young and defendant Attorney Stever must be dismissed for lack of state action. Plaintiff has alleged that defendant Attorney Young is a private attorney associated with the Young Law Office PLLC in Lowville, New York. Am. Compl. at 12. Plaintiff has also alleged that defendant Attorney Stever, who is now retired, was a private attorney associated with Conboy, McKay Bachman and Kendall LLP. *Id*. at 9.

White alleges she hired Attorney Young, and later fired him, after he did a deficient job in representing her during the estate proceedings, including

making some misrepresentations to the probate court during the estate proceedings.  Am. Compl. at 12.  White further alleges that Attorney Stever was retained by her father John to remove his wife Arlene as executrix, and that this change took place under a set of circumstances that suggest her father lacked mental capacity to execute the change and/or that his will had been overborne by others.  *Id.*

Even assuming all of this wrongful conduct to be true, these allegations do not establish state action against defendants Attorney Young and Attorney Stever.  Federal courts in this Circuit have repeatedly held that private attorneys and their law firms, whether they are court-appointed or retained, are not "state actors" under § 1983.[4]  *Harrison v. New York*, 95 F. Supp. 3d 293, 328–29 (E.D.N.Y. 2015) (collecting cases).

Notably, White has correctly asserted that these defendants are "officers of the court," at least in the sense that they have certain ethical obligations that follow from their licensure as attorneys in New York State.  But neither the fact that their conduct was subject to State ethical regulations, nor the fact that they participated in State proceedings that plaintiff believed to be conducted inappropriately, is sufficient to render either of these defendants

---

[4] An otherwise private person or entity can be held liable under § 1983 if they engage in a conspiracy with state officials to deprive a person of her federal rights.  That possibility will be discussed *infra*.

liable as state actors.  Accordingly, plaintiff's § 1983 claims must be dismissed against defendants Attorney Young and Attorney Stever.

## 2.  **Judicial Immunity**

Unlike the two private attorneys, there is no question that defendants Judge Renzi and Judge Schwerzmann—both of whom are alleged to have presided over proceedings in Jefferson County Surrogate's Court—can be considered state actors under § 1983.  *See, e.g.*, *Griffin v. Maryland*, 378 U.S. 130, 135 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action.").

Unfortunately, however, that is not the end of the inquiry.  "It is well settled that judges generally have absolute judicial immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (cleaned up).  This immunity doctrine applies "even when the judge is accused of acting maliciously and corruptly," *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976), or where "the act he took was in error . . . or was in excess of his authority," *Mireles v. Waco*, 502 U.S. 9, 12–13 (1991) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Further, the Federal Courts Improvement Act of 1996 expressly amended the text of 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Consequently, "the doctrine of absolute judicial immunity now extends to cover suits against judges where the plaintiff seeks not only monetary relief, but injunctive relief as well, unless preceded by a declaration, or by a showing that such declaratory relief is unavailable." *MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009).

Measured against this body of law, White's § 1983 claims against defendants Judge Renzi and Judge Schwerzmann must be dismissed on the basis of absolute judicial immunity.  Plaintiff has alleged that defendant Judge Schwerzmann presided over the estate proceedings until his retirement, when the case was reassigned to Judge Renzi.  Am. Compl. at 21.

Broadly construed, White's operative complaint alleges that Judge Schwerzmann failed to control the attorneys who appeared before him in connection with the estate proceedings, and may have been involved in incorrect or biased rulings vis-a-vis the valuation and ownership of the contested shares of stock.  White further alleges that Judge Renzi was biased against her, and improperly allowed his personal accountant to render an opinion on the valuation of the contested shares of stock.

Even assuming this wrongful conduct to be true, these allegations do not overcome the broad sweep of judicial immunity.  Although judicial immunity

will not shield judges from liability for "nonjudicial actions," *Mireles*, 502 U.S. at 11, or a judge who "acts in the clear absence of all jurisdiction," *Tucker v. Outwater*, 118 F.3d 930, 936 (2d Cir. 1997), plaintiff has only alleged improper acts that these judges took within their jurisdictional competence in their capacity as State judicial officers. Accordingly, plaintiff's § 1983 claims must be dismissed against defendants Judge Schwerzmann and Judge Renzi. *Cf. Cinotti v. Adelman*, 709 F. App'x 39, 41 (2d Cir. 2017) (summary order) ("[E]ven if the judge's actions were, as the plaintiff asserts, incorrect or improper, the plaintiff is barred by established law from bringing a lawsuit against the judge to correct or obtain compensation for that error.").

### 3. **Officer Maney**

As with Judge Schwerzmann and Judge Renzi, there is no question that Officer Maney—whom plaintiff alleges was acting in his capacity as a sworn officer of the Watertown Police Department, can be considered a state actor for purposes of § 1983. *See, e.g.*, *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (explaining that even an off-duty officer may be held liable as a state actor if he is "perform[ing] duties prescribed generally for police officers").

However, White has not plausibly alleged any actionable § 1983 claims against Officer Maney. Plaintiff has alleged that she contacted the Watertown Police, eventually received a return phone call from Officer Maney, and explained to him "the situation of what appeared to be an alleged

forged signature on the codicil" to her father's will.  Plaintiff further alleges that despite providing Officer Maney with evidence in support of this accusation, Officer Maney eventually told plaintiff that the police "would not be doing anything further" and that she "would just have to accept" that she "was the victim of the forgery."

Even assuming this wrongful conduct to be true, it does not amount to a plausible § 1983 claim.  As the Second Circuit has explained, "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion." *Harrington v. Cty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010).  To that end, federal courts have repeatedly held that crime victims "do not have a constitutionally protected right to a government investigation of alleged wrongdoing." *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 388 (E.D.N.Y. 2013).  Accordingly, plaintiff's § 1983 claims must be dismissed against defendant Officer Maney. *Antonetti v. City of N.Y.*, 422 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) (collecting cases).

**4.  <u>Conspiracy</u>**

In light of White's *pro se* status, the Court has also independently considered whether she has stated a claim for § 1983 conspiracy, which if plausibly alleged can even reach joint conduct between private actors (such as the private attorneys she has named as defendants) and state officials (such as the police officer and judges).

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Morpurgo v. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010) ("To sustain a claim for conspiracy under Section 1983, a plaintiff must demonstrate that the defendant acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated the plaintiff's rights.").

White has alleged various facts that, in her view, suggest the possibility of conspiratorial behavior.  For instance, plaintiff alleges irregular behavior on behalf of Judge Renzi, whom she believes is biased against her.  Plaintiff alleges that Attorney Dembs and Attorney Collins were in regular communication (at least until she fired Attorney Dembs).  Plaintiff alleges that Attorney Young "went easy" on her siblings when offered the opportunity to depose them concerning the possible fraud.  And plaintiff alleges that Attorney Stever made false statements during his deposition.

Upon review, however, White has not plausibly alleged a claim for conspiracy between any combination of the named defendants.  Of course, "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct evidence." *Pangburn*, 200

F.3d at 72 (cleaned up).  Even so, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  "The Second Circuit has repeatedly held that [ ] conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights are insufficient—even on the more lenient standard used to decide a motion to dismiss." *Morpurgo*, 697 F. Supp. 2d at 340.  Accordingly, this claim must also be dismissed.

### B.  White's Other Claims for Relief

White has also asserted claims pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. §§ 1331 and 1332, 28 U.S.C. § 1391, 18 U.S.C. § 1965, 18 U.S.C. § 1346, 18 U.S.C. §§ 241 and 242, the New York Code of Judicial Conduct, and the New York Rules of Professional Conduct.  Am. Compl. at 5.

### 1.  28 U.S.C. § 2201 and 2202

These two provisions of law are known as the "Declaratory Judgment Act."  In particular, Title 28 of the United States Code, sections 2201 and 2202, empower a federal district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" § 2201, and if necessary, to order further relief "against any adverse party whose rights have been determined by such a [declaratory] judgment," § 2202.

"But the Declaratory Judgment Act is not a source of federal substantive rights." *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 80 (S.D.N.Y. 2012). "Nor does it provide an independent cause of action." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). "Its operation is procedural only." *Id*. In other words, "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Id*.

As explained *supra*, White does not have a viable § 1983 claim against any of the named defendants. And as will be detailed *infra*, none of the other statutes and legal provisions on which she relies—28 U.S.C. §§ 1331 and 1332, 28 U.S.C. § 1391, 18 U.S.C. § 1965, 18 U.S.C. § 1346, 18 U.S.C. §§ 241 and 242, the New York Code of Judicial Conduct, or the New York Rules of Professional Conduct—give rise to an independent private right of action; that is, an avenue for a private citizen like plaintiff to enforce the requirements of the statute against the defendants, in court or elsewhere.

Thus, White's claims under 28 U.S.C. §§ 2201 and 2202 must be dismissed for failure to state a claim for relief. *See, e.g.*, *Muzumala v. Mayorkas*, 2022 WL 2916610, at *4 (S.D.N.Y. July 22, 2022) (dismissing claims under the Declaratory Judgment Act because the statute does not provide for a cause of action).

## 2.  28 U.S.C. §§ 1331 and 1332

These two provisions of law govern a federal district court's subject matter jurisdiction.  "A federal court exercises limited jurisdiction pursuant to Article III of the Constitution.  It may exert subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete 'diversity of citizenship' between each plaintiff and all defendants and a minimum of $75,000 in controversy,  28 U.S.C. § 1332." *Hale v. State Farm Ins.*, 2019 WL 10250761, at *2 (N.D.N.Y. July 18, 2019) (quoting *Gonzalez v. Ocwen Home Loan Serv.*, 74 F. Supp. 3d 504, 511 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016) (summary order).

For instance, a private plaintiff who asserts a cognizable claim under 42 U.S.C. § 1983 is said to have properly invoked a federal court's subject matter jurisdiction over the controversy under 28 U.S.C. § 1331, because the plaintiff's claim arises under the Constitution or laws of the United States.

And even if the private plaintiff has chosen to assert only state law claims (as opposed to federal ones), she might still be able to properly invoke a federal court's limited subject matter jurisdiction if (a) she and the named

defendants are "diverse"; that is, if they are domiciled[5] in different states; and (b) the matter in controversy exceeds the sum of $75,000.

In either case, though, the plaintiff must *also* identify a substantive law that actually creates a private right of action—merely invoking § 1331 and/or § 1332 is not enough to maintain a civil action.  In other words, because "these statutes are jurisdictional in nature," they "do not provide a substantive right of action."  *Ercole v. LaHood*, 2011 WL 1205137, at *5 n. 3 (E.D.N.Y. Mar. 29, 2011).  Accordingly, White's claims under these statutes must be dismissed for failure to state a claim for relief.

### 3.  <u>28 U.S.C. § 1391</u>

Title 28 of the United States Code, section 1391, governs issues of venue; that is, this statute describes how a plaintiff should select the appropriate judicial district in which to file a civil action.  As with the subject matter jurisdiction provisions found in § 1331 and § 1332, this provision of federal law does not give rise to a cause of action.  Accordingly, White's claim under this statute must be dismissed for failure to state a claim for relief.

### 4.  <u>18 U.S.C. § 1965</u>

Title 18 of the United States Code, section 1965, is another venue-laying provision.  Section 1965 is actually part of the federal Racketeer Influenced

---

[5] The concept of domicile is closely related to, but technically distinct from, a party's residency.

and Corrupt Organizations ("RICO") Act, which was enacted by Congress in 1970 to fight organized crime.  *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985).  However, as with the general venue provision found in § 1391, this provision of federal law does not give rise to a substantive cause of action.[6]  Accordingly, White's claim under this statute must be dismissed for failure to state a claim for relief.

### 5.  **18 U.S.C. §§ 241 and 242**

Sections 241 and 242 are criminal statutes.  Section 242 makes it unlawful to "subject[ ] any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  Section 241 makes it unlawful to "conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured . . . by the Constitution or laws of the United States, or because of [that person's] having so exercised the same."

Upon review, White cannot maintain claims under these statutes, either.  "It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints."  *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d

---

[6]  The Court has also considered whether this may have been an attempt by plaintiff to plead a civil RICO claim.  Upon review, plaintiff has not plausibly done so.  *See, e.g.*, *MinedMap, Inc. v. Northway Mining, LLC*, 2021 WL 1926452, at *5 (N.D.N.Y. May 13, 2021) (explaining that it is the "rare complaint that actually states a claim for civil RICO").

81, 86–87 (2d Cir. 1972).  Consequently, the Second Circuit has repeatedly held that there is no private right of action under either § 241 or § 242.  *See, e.g.*, *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases).

Thus, White's claims under 18 U.S.C. §§ 241 and 242 must be dismissed for failure to state a claim for relief.  *See, e.g.*, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (affirming dismissal of plaintiff's claims under § 242 because this "criminal statute[ ] . . . do[es] not provide [a] private cause[ ] of action"); *Foskey v. Corp. State of N.Y.*, 2022 WL 3228271, at *3 (E.D.N.Y. Aug. 10, 2022) (dismissing plaintiff's claims under various federal criminal statutes).

### 6.  <u>18 U.S.C. § 1346</u>

Title 18 of the United States Code, section 1346, defines the term "scheme or artifice to defraud" as including "a scheme or artifice to deprive another of the intangible right of honest services."  As with § 241 and § 242 discussed *supra*, this is a federal criminal statute that does not provide a private right of action.  Accordingly, White's claim under this statute must be dismissed for failure to state a claim for relief.  *See, e.g.*, *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide rights of action.).

**7.  Code of Judicial Conduct & Rules of Professional Conduct**

White has asserted claims under several Canons of the New York Code of Judicial Conduct, which governs the conduct of judges in the New York State Court System.  Plaintiff has also asserted claims under the New York Rules of Professional Conduct, which govern the conduct of attorneys admitted to practice in New York State.

Upon review, any claims based on these State-imposed regulations must be dismissed because they do not create any private rights of action.  *See, e.g.*, *Kalola v. Int'l Bus. Mach. Corp.*, 2019 WL 6879307, at *4 (S.D.N.Y. Dec. 16, 2019) (dismissing same based on New York Rules of Professional Conduct).  Indeed, the preamble to New York's Code of Judicial Conduct explicitly state that the Canons "are not designed or intended as a basis for civil liability or criminal prosecution."  Accordingly, White's claim under these ethical rules and regulations must be dismissed.

**C.  Leave to Amend**

The final question is whether White should be given leave to amend her pleading, which she has already amended once as of right.  "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up).

However, "it is well established that leave to amend a complaint need not

be granted where amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  After considering the matter, White will not be given leave to further amend because the problems with her claims are substantive—her claims are grounded in events that took place in the probate proceedings in Jefferson County, or are based on the alleged failure of the Watertown Police to investigate fraud perpetrated in connection with those proceedings.  Because White cannot sustain any cognizable claims based on those facts, leave to amend would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, leave to amend must be denied.

## V.  <u>CONCLUSION</u>

White's operative complaint must be dismissed.  Even liberally construed, plaintiff has failed to plausibly allege any cognizable claims against any of the named defendants.  Importantly, even if the wrongful conduct alleged by plaintiff were true, her remedy would not lie in federal court.

Rather, if plaintiff has a good-faith belief that one or more of the state court judges who presided over the probate proceedings acted improperly, she should consider filing a complaint with the New York State Commission on Judicial Conduct, which is the agency tasked with investigating such allegations.

Likewise, although the Court recognizes that plaintiff received what she believed to be an unsatisfactory response to her previous grievance against

Attorney Dembs, if she has a good-faith belief that one or more of the private attorneys named in her complaint has acted improperly, the Grievance Committee for the Fifth Judicial District remains the appropriate place to challenge that misconduct.

Therefore, it is

ORDERED that

1. The State defendants' motion to dismiss is GRANTED;

2. Defendant Attorney Young's motion to dismiss is GRANTED;

3. Plaintiff's motion to strike is DENIED;

4. Plaintiff's motion for leave to file a sur-reply is GRANTED;

5. Plaintiff's amended complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

Dated:  August 24, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge